IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SALVATORE VACIRCA,**          Plaintiff<br><br>v.<br><br>**NATIONAL MACHINERY COMPANY,**<br>**and NATIONAL MACHINERY, LLC,**          Defendants. | Civil Action No.  05-11419-MLW |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION OF DEFENDANT, NATIONAL MACHINERY COMPANY FOR SUMMARY JUDGMENT**
_____

Defendant National Machinery Company ("NMC") submits the following Statement of Undisputed Material Facts in support of its Motion for Summary Judgment:

1. Plaintiff Salvatore Vacirca ("Vacirca") was hired by Thermo Electron Corporation in 1986 and worked there continuously until 2001, as a general laborer.
   **Supporting Evidence**: Transcript of deposition of plaintiff Salvatore Vacirca, taken on October 3, 2006 ("Vacirca depo.), p. 32, lines 7-9; p. 33, lines 17-20, p. 37, lines 1-12.

2. Thermo Electron (now called Tecomet, Inc.), located in Wilmington, Massachusetts, is in the business of manufacturing metal parts for artificial joints and limbs.
   **Supporting Evidence**: Vacirca depo., p. 35. line 22 to p. 36, line 9.

3. Over the course of his employment at Tecomet, Vacirca operated several different types of metal forming machines, including a Swager Machine, a belt grinder and a 700 ton hot forge MaxiPres metal stamping press.
   **Supporting Evidence:** Vacirca depo., p. 37, line 13 to p. 38, line 9; p. 64 line 21 to p. 65, line 22.

4. For five or six years, from at least 1996 until August, 2001, Vacirca spent between 75 percent and 90 percent of his time at work operating the MaxiPres.
   **Supporting Evidence:** Vacirca depo., p. 62, line 14 to p. 63, line 11.

5. The MaxiPres had two metal "dies" inside the machine, one above and one below, that had a molded impression that came together to stamp out parts
   **Supporting Evidence:** Vacirca depo., p. 67, line 1 to p. 69, line 7.

6. The MaxiPres was operated by using tongs to place a metal "slug" into the lower die inside the machine, removing the tongs, and then stepping on a pedal to actuate the MaxiPres.
**Supporting Evidence:** Vacirca depo., p. 67, line 14 to p. 69, line 12; p. 120, lines 4-24.

7. The MaxiPres had a large "ram", that was propelled downward, causing the dies to stamp the metal slug.
**Supporting Evidence:** Vacirca depo., p. 93, lines 6-11.; p. 120, lines 4-24.

8. The pedal was attached to the machine on the floor below the opening in the machine that gave access to the dies.
**Supporting Evidence:** Vacirca depo., p. 70, lines 2-7.

9. After the machine cycled and stamped the piece, the operator used tongs to remove the piece from the die and placed it into a cooling basket.
**Supporting Evidence:** Vacirca depo., p. 121, lines 1-19.

10. The pedal was covered by a metal "shroud", which had several inches of clearance above and beside the pedal, and which did not impede the MaxiPres operator's access to the pedal.
**Supporting Evidence:** Vacirca depo., p. 78, lines 3-9; p. 102, lines 4 to p. 103, line 22, and Exhibit B3, B4 and B5 thereto; p. 208, line 18 to p. 209, line 8 and Exhibit B4 thereto.

11. The pedal had a lever on its side which, when flipped, locked the pedal and prevented anyone from actuating the machine by stepping on the pedal.
**Supporting Evidence:** Transcript of the deposition of Werner Fehmel taken on December 11, 2006 ("Fehmel depo."), p. 15, line 2 to p. 16, line 6.

12. The MaxiPres had a "brake" setting that prevented the machine cycling, that was engaged by means of a lever on the face of the machine.
**Supporting Evidence:** Fehmel depo., p. 16, lines 6-16; p. 48, lines 13-16; p. 71, lines 5-22.

13. As of August 2, 2001, the MaxiPres had a button switch on the face of the machine that turned the electrical power on and off.
**Supporting Evidence:** Vacirca depo., p. 78, lines 10-18; p. 106, lines 9-24, and Exhibit B6 thereto.

14. After turning off the electrical power, the MaxiPres required up to one minute until the machine's motor and flywheel came to a stop.
**Supporting Evidence:** Vacirca depo., p. 78, line 19 to p. 80, line 8.

15. On August 2, 2001, Vacirca was operating the machine to stamp a run of parts, together with a co-worker, Manuel Rodriguez ("Rodriguez").
**Supporting Evidence:** Vacirca depo., p. 128, line 6 to p. 130, line 14.

16. After the last piece in the run of parts was stamped, it became stuck in the die and was knocked loose with a long screwdriver.

    **Supporting Evidence**: [Vacirca depo., p. 131, line 11 to p. 133, line 1; Transcript of the deposition of Manuel Rodriguez taken on December 11, 2006 ("Rodriguez depo."), p._47, line 23 to p. 48, line 10.

17. Vacirca, without locking the pedal, setting the brake on the MaxiPres or turning off the power, then reached his right hand into the MaxiPres to remove the piece.
    **Supporting Evidence:** Vacirca depo., p. 131, line 11 to p. 134, line 9.

18. While his hand was in the machine, Vacirca accidentally stepped on the pedal, triggering the operation of the MaxiPres.
    **Supporting Evidence:** Vacirca depo., p. 134, lines 6-13.

19. Vacirca could did not remove his hand in time, and it was crushed between the dies inside the machine.
    **Supporting Evidence:** Vacirca depo., p. 134, line 6 to p. 135, line 5.

20. Vacirca was aware that if he placed his hand inside the MaxiPres while the power was on, stepping on the trigger pedal could cause him injury.
    **Supporting Evidence:** Vacirca depo., p. 76, line 16 to p. 77, line 14; p. 78, lines 19-22.

21. Vacirca was aware that the pedal was attached to the MaxiPres below the MaxiPres' point of operation.
    **Supporting Evidence:** Vacirca depo., p. 70, lines 2-7; p. 94, line 18 to p. 95, line 3 and Exhibit B2 thereto.

22. Vacirca was also aware that no physical guard was present that would prevent his foot from stepping on the pedal or prevent him from reaching his hand into the MaxiPres while the power was on.
    **Supporting Evidence:** Vacirca depo., p. 78, lines 3-9; p. 102, lines 4 to p. 103, line 22, and Exhibit B3, B4 and B5 thereto; p. 208, line 18 to p. 209, line 8 and Exhibit B4 thereto.; p. 94, line 18 to p. 95, line 3 and Exhibit B2 thereto.

23. Vacirca knew of the electrical power switch and brake lever on the machine.
    **Supporting Evidence:** Vacirca depo., p. 78, lines 10-18; p. 106, lines 9-24, and Exhibit B6 thereto; Rodriguez depo., p. 79, lines 14-18.

24. Prior to the accident in which he was injured, Vacirca had regularly worked inside the MaxiPres, routinely shutting off the power to the machine while changing the dies in between runs of parts to be stamped.
    **Supporting Evidence:** Vacirca depo., p. 114, line 19 to p. 117, line 4.

25. Other operators and the maintenance supervisor at Tecomet were aware of the lock lever on the MaxiPres pedal, the brake lever on the MaxiPres and the electrical power switch and used them each time they performed work in inside the MaxiPres.
    **Supporting Evidence:** Fehmel Depo., p. 89, line 3 to p. 90, line 2; p. 96, line 18 to p. 97, line 7; p. 37, line 23 to p. 38, line 3; p. 17, line 6 to p. 18, line 21.

26. Prior to accident in which Vacirca was injured by the MaxiPres, when performing work on the MaxiPres, before reaching inside the MaxiPres, the maintenance staff at Tecomet first "locked down" the machine by setting the brake, setting the trigger pedal's lock lever in a locked position, turning off the electrical power and placing a block under the ram inside the machine.
    **Supporting Evidence:** Fehmel depo., p. 15, line 2 to p. 16, line 15; p. 89, line 6 to p. 90, line 2; p. 96, line 18 to p. 97, line 7.

27. The MaxiPres had been manufactured by NMC in 1946.
    **Supporting Evidence:** Transcript of the Deposition of Gary Stroup, taken on December 6, 2006 ("Stroup depo."), p. 100, line 17 to p. 101, line 18 and Exhibit 10 thereto.

28. The MaxiPres was purchased by Tecomet from another owner in 1981.
    **Supporting Evidence:** Exhibit 1 to the Statement of Facts

29. At the time of Vacirca's injury in August 2001, the MaxiPres was operating properly.
    **Supporting Evidence**; Vacirca depo., p. 82, line 23 to p. 83, line 16.

30. At some point between 1996 and 1998, Tecomet's maintenance chief, Werner Fehmel, met with a representative of a company called Banner Safety to discuss possible safety upgrades to various machines at Tecomet, including the MaxiPres.
    **Supporting Evidence:** Fehmel depo., p. 56, line 12 to p. 60, line 5; p. 64, lines 4-11; p. 92, line 21 to p. 93, line 3.

31. These possible safety upgrades to the MaxiPres included installation of a light curtain, cutoff mats or a railing.
    **Supporting Evidence:** Fehmel depo., p. 56, line 12 to p. 60, line 5.

32. A light curtain is a sensor that prevents the machine from cycling if a light beam emitted by the device is interrupted.
    **Supporting Evidence:** Fehmel depo., p. 57, lines 10-16.

33. Mr. Fehmel informed the plant manager of these potential safety upgrades.
    **Supporting Evidence:** Fehmel depo., p. 58, lines 1-5; p. 74, lines 9-21.

34. Prior to August 2, 2001, despite Mr. Fehmel's concerns regarding the safety of these machines and despite his and the plant manager's knowledge of possible safety ugrades, Tecomet never ordered or installed any such safety upgrades on the MaxiPres.
    **Supporting Evidence:** Fehmel depo., p. 56, line 12 to p. 61, line 17.

35. At least as early as 1994, NMC was aware that Tecomet owned the MaxiPres.
    **Supporting Evidence:** Stroup, depo., p. 103 lines 16 to p. 104, line 4 and Exhibit 10 thereto.

36. Prior to 2001, NMC had provided Tecomet with an Operation Manual for the MaxiPres, which included a list of warnings regarding hazards connected with the MaxiPres. These warnings included the following:

> **!WARNING**
> **NEVER . . .**
> **[. . .]**
> **Leave foot trip unlocked when not using**
> **Reach into machine when power is on –**
> **USE TONGS**
> **Work in machine before disconnecting**
> **power, and blocking ram**
> **Reach in machine when flywheel is moving**

  **Supporting Evidence:** Fehmel Depo., p. 39, lines 6-17; Exhibit 2 to Statement of Facts.

37. On and before August 2, 2001, the MaxiPres had a sign affixed to its front, immediately above the opening in the machine that provided access to the dies. The sign, in large red letters, read as follows:

> **SHUT OFF POWER**
> **AT MAIN PANEL**
> **BEFORE SERVICING**
> **MACHINE OR**
> **CHANGING TOOLS**

    **Supporting Evidence:** Fehmel depo., p. 44, line 14 to p. 45, line 10 and Exhibit H thereto; Vacirca depo., p. 205, line 14 to p. 206, line 21 and Exhibit B7 thereto.

38. Periodically, NMC sent mailings to MaxiPres owners regarding safety warnings for machines manufactured by NMC. Prior to 2001, NMC had sent at least one such a mailing to Tecomet.
    **Supporting Evidence:** Exhibit 3 to Statement of Facts.

39. A warning label sent from NMC to Tecomet was affixed to the MaxiPres prior to August 2, 2001 and was on the machine at the time of the accident. The label showed, in graphic form, a hand being crushed by a die in the MaxiPres.
    **Supporting Evidence:** Fehmel depo., p. 44, line 14 to p. 45, line 10 and Exhibit H thereto.

40. In 1999, Tecomet contacted NMC to request a mechanical evaluation of the MaxiPres.
    **Supporting Evidence:** Fehmel depo., p. 23, line 7 to p. 25, line 21.

41. Tecomet specifically did not request that NMC perform a safety evaluation at the time it contacted NMC.
    **Supporting Evidence:** Stroup depo., p. 99, line 10 to p. 100, line 8; Fehmel depo., p. 23, line 7 to p. 25, line 21.

42. In addition, NMC did not understand Tecomet's request for a mechanical evaluation to include a request for a safety evaluation.
    **Supporting Evidence:** Stroup depo., p.99, line 10 to p. 100, line 8.

43. After NMC's technician, Michael Wise, inspected the MaxiPres, NMC provided Tecomet with a written evaluation and proposal to repair various mechanical problems with the MaxiPres.
**Supporting Evidence:** Fehmel depo., p. 25, line 22 to p. 26, line 12 and Exhibit Q thereto; Stroup depo., p. 60, line 10 to p. 68, line 2 and Exhibit 5 thereto; Stroup depo., p. 94, lines 21-24.

44. As part of the evaluation provided by NMC to Tecomet, NMC noted that the MaxiPres did not have a two-handed jog control.
**Supporting Evidence:**  Stroup depo., p. 60, line 10 to p. 68, line 2 and Exhibit 5 thereto.

45. NMC was not hired to do the work described in the quotation given by NMC to Tecomet for the MaxiPres.
**Supporting Evidence:**  Stroup depo., p. 81, line 4 to p. 86, line 23.

Respectfully submitted,

Dated: May 4, 2007

**National Machinery Company**, Defendant
By its Attorneys,

/s/ Gerald S. Frim
Mark E. Cohen           [BBO #089800]
Robert J. Maselek       [BBO #564690]
Gerald S. Frim          [BBO # 656204]
**The McCormack Firm, LLC**
One International Place
Boston, MA   02110
Ph: 617-951-2929

### CERTIFICATE OF SERVICE

I, Gerald S. Frim, hereby certify that the foregoing document and all exhibits thereto, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 4, 2007.

**Dated:** May 4, 2007                                                              /s/ Gerald S. Frim

97339.1