**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **SALVATORE VACIRCA,**<br>　　　　　Plaintiff<br><br>v.<br><br>**NATIONAL MACHINERY COMPANY**<br>**and NATIONAL MACHINERY, LLC,**<br>　　　　　Defendants. | CIVIL ACTION NO.  05-11419-MLW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT, NATIONAL**
**MACHINERY COMPANY FOR SUMMARY JUDGMENT**

———————————————————————————

　　　　Defendant, National Machinery Company ("NMC"), submits the following Memorandum of

Law in support of its Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Local Rule 56.1.

### I.　　INTRODUCTION

　　　　This case arises out of an industrial accident that occurred in 2001 in which the plaintiff,

Salvatore Vacirca ("Vacirca"), during the course of his employment at Tecomet, Inc. ("Tecomet"),

severely injured his hand while operating a MaxiPress 700 ton hot forge metal stamping press

("MaxiPres").  NMC manufactured the press in 1946.  Vacirca brought this action against NMC,

alleging: (1) NMC breached the implied warranties of merchantability and fitness with regard to the

MaxiPres, and (2) that NMC negligently failed to warn Tecomet about an unsafe trigger pedal on

the MaxiPres and about safety upgrades which allegedly would have eliminated the hazard that

caused the accident.  NMC contends that it did not breach any warranties or negligently fail to warn

about dangers associated with the machine.  Based on Vacirca's disclosure of his liability expert's

opinion, the only theory of liability that he has advanced is that NMC failed to warn Tecomet of the

allegedly dangerous trigger pedal. Other than the pedal, Vacirca has presented no evidence to meet his burden of proving the existence of any specific design defect. The facts are undisputed that the hazard that caused Vacirca's injury was open and obvious and that Vacirca and Tecomet were well aware of the nature of the hazard and the existence (or lack) of any physical guards that would have prevented the accident. Vacirca's claims are therefore barred by (1) the open and obvious nature of the hazard; (2) Tecomet's and Vacirca's status as sophisticated users of the MaxiPres, who were aware of its hazards; and (3) Vacirca's unreasonable conduct in the face of the known hazards of the MaxiPres. Accordingly, NMC is entitled to summary judgment on all of the Counts in the Complaint.

## II.    STATEMENT OF FACTS

Plaintiff Salvatore Vacirca ("Vacirca") was hired by Thermo Electron Corporation in 1986 and worked there continuously until 2001, the date of his accident, as a general laborer. *[See Defendant's Statement of Undisputed Material Facts ("SF"), No. 1]* Thermo Electron (now called Tecomet, Inc.), located in Wilmington, Massachusetts, is in the business of manufacturing metal parts for artificial joints and limbs. *[See SF, No. 2]* Over the course of his employment at Tecomet, Vacirca operated several different types of metal forming machines, including a Swager Machine, a belt grinder and the 700 ton hot forge MaxiPres metal stamping press. *[See SF, No. 3]* For five or six years, from at least 1996 until August, 2001, Vacirca spent between 75 percent and 90 percent of his time at work operating the MaxiPres. *[See SF, No. 4]*

The MaxiPres had two metal "dies" inside the machine, one above and one below, that had a molded impression that came together to stamp out parts. *[See SF, No.5]* The MaxiPres was operated by using tongs to place a metal "slug" into the lower die inside the machine, removing the tongs, and then stepping on a pedal to actuate the MaxiPres. *[See SF, No. 6]* The MaxiPres had a large "ram", that was propelled downward, causing the dies to stamp the metal slug. *[See SF,*

- 2 -

*No. 7]* The pedal was attached to the machine on the floor below the opening in the machine that gave access to the dies. *[See SF, No. 8]* After the machine cycled and stamped the piece, the operator used tongs to remove the piece from the die and placed it into a cooling basket. *[See SF, No. 9]* The pedal was covered by a metal "shroud", which had several inches of clearance above and beside the pedal, and which did not impede the MaxiPres operator's access to the pedal. *[See SF, No. 10]* The pedal had a lever on its side which, when flipped, locked the pedal and prevented anyone from actuating the machine by stepping on the pedal. *[See SF, No. 11]* The MaxiPres had a "brake" setting that prevented the machine cycling, that was engaged by means of a lever on the face of the machine. *[See SF, No. 12]* As of August 2, 2001, the MaxiPres had a button switch on the face of the machine that turned the electrical power on and off. *[See SF, No. 13]* After turning off the electrical power, the MaxiPres required up to one minute until the machine's motor and flywheel came to a stop. *[See SF, No. 14]*

On August 2, 2001, Vacirca was operating the machine to stamp a run of parts, together with a co-worker, Manuel Rodriguez ("Rodriguez"). *[See SF, No. 15]* After the last piece in the run of parts was stamped, it became stuck in the die and was knocked loose with a long screwdriver. *[See SF, No. 16]* Vacirca, without locking the pedal, setting the brake on the MaxiPres or turning off the power, then reached his right hand into the MaxiPres to remove the piece. *[See SF, No.17]* While his hand was in the machine, Vacirca accidentally stepped on the pedal, triggering the operation of the MaxiPres. *[See SF, No. 18]* Vacirca did not remove his hand in time, and it was crushed between the dies inside the machine. *[See SF, No. 19]*

Vacirca was aware that if he placed his hand inside the MaxiPres while the power was on, stepping on the trigger pedal could cause him injury. *[See SF, No. 20]* Vacirca was aware that the pedal was attached to the MaxiPres below the MaxiPres' point of operation. *[See SF, No. 21]* Vacirca was also aware that no physical guard was present that would prevent his foot from stepping on the pedal or prevent him from reaching his hand into the MaxiPres while the power was

on. *[See SF, No. 22]*  Vacirca knew of the electrical power switch and brake lever on the machine. *[See SF, No. 23]*  Prior to the accident in which he was injured, Vacirca had regularly worked inside the MaxiPres, routinely shutting off the power to the machine while changing the dies in between runs of parts to be stamped. *[See SF, No. 24]*  Other operators and the maintenance supervisor at Tecomet were aware of the lock lever on the MaxiPres pedal, the brake lever on the MaxiPres and the electrical power switch and used them each time they performed work in inside the MaxiPres.  [See SF, No. 25]  When performing work on the MaxiPres, before reaching inside the MaxiPres, the maintenance staff at Tecomet first "locked down" the machine by setting the brake, setting the trigger pedal's lock lever in a locked position, turning off the electrical power and placing a block under the ram inside the machine. [See SF, No. 26]

The MaxiPres was manufactured by NMC in 1946. *[See SF, No.27]*  It was purchased by Tecomet from another owner in 1981.  *[See SF, No. 28]*   At the time of Vacirca's injury in August 2001, the MaxiPres was operating properly.  *[See SF, No. 29]*

At some point between 1996 and 1998, Tecomet's maintenance chief, Werner Fehmel, met with a representative of a company called Banner Safety to discuss possible safety upgrades to various machines at Tecomet, including the MaxiPres. *[See SF, No. 30]*  These possible safety upgrades to the MaxiPres included installation of a light curtain, cutoff mats or a railing.  *[See SF, No. 31]*  A light curtain is a sensor that prevents the machine from cycling if a light beam emitted by the device is interrupted. *[See SF, No. 32]*   Mr. Fehmel informed the plant manager of these potential safety upgrades. *[See SF, No. 33]*   However, prior to August 2, 2001, despite Mr. Fehmel's concerns regarding the safety of these machines and despite his and the plant manager's undisputed knowledge of possible safety ugrades, Tecomet never ordered or installed any such safety upgrades on the MaxiPres. *[See SF, No. 34]*

At least as early as 1994, NMC was aware that Tecomet owned the MaxiPres. *[See SF, No. 35]*  Prior to 2001, NMC had provided Tecomet with an Operation Manual for the MaxiPres, which

included a list of warnings regarding hazards connected with the MaxiPres. *[See SF, No. 36]* These warnings included the following:

> **!WARNING**
>
> # NEVER . . .
>
> **[. . .]**
>
> **Leave foot trip unlocked when not using**
>
> **Reach into machine when power is on —
> USE TONGS**
>
> **Work in machine before disconnecting
> power, and blocking ram**
>
> **Reach in machine when flywheel is moving**

Prior to August 2, 2001, the MaxiPres,, had a sign affixed to its front, immediately above the opening in the machine that provided access to the dies. *[See SF, No.37]* The sign, in large red letters, read as follows:

> **SHUT OFF POWER
> AT MAIN PANEL
> BEFORE SERVICING
> MACHINE OR
> CHANGING TOOLS**

Periodically, NMC sent mailings to MaxiPres owners regarding safety warnings for machines manufactured by NMC. Prior to 2001, NMC had sent at least one such a mailing to Tecomet. *[See SF, No. 38]* A warning label sent from NMC to Tecomet was affixed to the MaxiPres prior to August 2, 2001. *[See SF, No. 39]* The label showed, in graphic form, a hand being crushed by a die in the MaxiPres.

In 1999, Tecomet contacted NMC to request a mechanical evaluation of the MaxiPres. *[See SF, No. 40]* Tecomet specifically did not request that NMC perform a safety evaluation at that time. *[See SF, No. 41]* In addition, NMC did not understand Tecomet's request to include a

- 5 -

request for a safety evaluation. *[See SF, No. 42]*   After NMC's technician, Michael Wise, inspected the MaxiPres, NMC provided Tecomet with a written evaluation and proposal to repair various mechanical problems with the MaxiPres.  *[See SF, No. 43]*   As part of the evaluation provided by NMC to ThermoElectron, NMC noted that the MaxiPres did not have a two handed jog control. *[See SF, No. 44]*   NMC was not hired to do the work described in the quotation given by NMC to Tecomet for the MaxiPres. *[See SF, No. 45]*

## III.     ARGUMENT

### A.     Introduction

NMC has asserted various affirmative defenses to Vacirca's warranty and negligence claims.  There are no disputed facts relating to these defenses, and they  bar Vacirca's claims as a matter of law.  In addition, if Vacirca is alleging that NMC's warranty duty arose solely as a result of its 1999 inspection of the MaxiPres, NMC is entitled to summary judgment on that claim as well. Although not the basis for this motion, NMC also contends that Vacirca cannot meet his burden of proof of proving a <u>prima facie</u> case with regard to his warranty and negligence claims, as is summarized below.

### B.     Summary Judgment Standard

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.  <u>Mesnick v. General Electric, Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, that there is no genuine issue as to any material fact and it is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only where the party opposing summary judgment provides evidence such that a reasonable jury could return a verdict for the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Once the moving party has satisfied its burden, the burden shifts to the non-moving party

- 6 -

to set forth specific facts showing there is a genuine, triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324,(1986).  If, after viewing the record in the light most favorable to the non-moving party, the Court determines that no genuine issue of material fact exists, summary judgment is appropriate.  Chapman v. Bernard's Inc., 167 F. Supp. 2d 406, 411 (D. Mass. 2001).

### C.     NMC Is Entitled to Summary Judgment on the Breach of Warranty Claim

Vacirca asserts that the MaxiPres, as originally designed and manufactured by NMC, was was unsafe and defective in design, and that this constitutes a breach of the implied warranties of fitness and merchantability.  Vacirca additionally alleges that NMC breached those implied warranties by failing to warn Vacirca's employer, Tecomet, that a redesigned pedal or a two-hand control could have been installed on the MaxiPres at some point prior to the accident.  Contrary to Vacirca's claims, however, the MaxiPres was not defective when manufactured in 1946 and NMC did not breach any implied warranties regarding the design of the machine.  In addition, since the MaxiPres was not defective, NMC did not owe Tecomet a continuing duty to warn Tecomet about post-sale safety improvements, such as a re-designed pedal or a two-handed control.  However, even if Plaintiff can establish that the MaxiPres was defective when manufactured and NMC did have a consequent duty to warn Tecomet about safety upgrades, Vacirca's warranty claims must fail because NMC's duty to warn was excused by the following: (1) the alleged danger was "open and obvious"; (2) both Tecomet and Vacirca were "sophisticated users" of the MaxiPres; and (3) Vacirca failed to act reasonably and his own conduct caused his injuries.

### 1.     The MaxiPres Was Not Defective When Sold

Under Massachusetts law, a manufacturer has no duty to advise purchasers about post sale safety improvements that have been made to a product that was reasonably safe at the time of sale.  Boston v. United States Gypsum Co., 37 Mass. App. Ct. 253, 264 (1994); Williams v. Monarch Machine Tool Co., 26 F.3d 228, 232 (1st Cir. 1994).  The MaxiPres was reasonably safe

at the time of sale, and thus NMC had no duty to advise Tecomet about any updates or revisions to the machine. The MaxiPres was manufactured by NMC in 1946. At that time, the MaxiPres was operated by a foot pedal control which was located at the base of the machine, slightly to the side of the opening into which the dies and metal pieces were placed. The operator simply stepped on the pedal to trigger the machine. An entire cycle took less than one second. The original foot pedal control incorporated a safety lock, consisting of a lever that was attached to the side of the pedal. The lever had to be set in the unlocked position in order for the pedal to function. When the pedal was not in use, the operator could easily move the lever to the locked position. This type of pedal was still on the MaxiPres at the time of the plaintiff's accident. In addition to the lock on the pedal, the MaxiPres had a brake switch that kept the press from activating accidentally, as well a prominently located power switch.

In order to prove that a machine was defectively designed and that a manufacturer is liable under a breach of warranty theory, a plaintiff must show that, *at the time of manufacture,* "a safer alternative design was feasible," Haglund v. Phillip Morris, 446 Mass. 741, 747 748 (2006), or that there was "an available modification which would reduce the risk without undue cost or interference with the performance of the machinery." Colter v. Barber Greene Co., et. al., 403 Mass. 50, 57 (1988). Although NMC developed an updated foot pedal for the MaxiPres in 1969, the original pedal, which was still in use at the time of plaintiff's accident, was reasonably safe. There was a lock on the pedal which, when used properly, completely eliminated the danger associated with inadvertent contact with the MaxiPres' trigger pedal. Moreover, there was an easily activated brake and a convenient power switch, both of which would have prevented the type of accident which is the subject of this case. Because these safeguards, taken together, provided adequate protection against inadvertent actuation, and because there is no evidence that potential upgrades were feasible at the time the MaxiPres was manufactured that would have actually reduced the risk of danger to users, the MaxiPres, as originally designed, was not defective.

**2.      Vacirca's Warranty Claims are Barred by NMC's Affirmative Defenses**

**a.      Vacirca's Warranty Claims Are Barred By the "Open and Obvious Danger" Defense**

There is no question that, at the time of Vacirca's accident, there were explicit warnings posted on the MaxiPres, alerting users about the danger of reaching into the machine.    Prior to the accident, NMC sent Tecomet a mailing that included warning labels to affix to the MaxiPres machines owned by Tecomet.  These warning labels included a graphic picture of a hand being crushed when put inside a machine.  Pictures of the MaxiPres that were taken immediately after the accident show that such a warning label was posted on the machine, which informed operators of the machine, in both words and pictures, not to put a hand into the machine while the power is on. [*See SF No. 39*] In addition, the NMC operating manual for the machine, which was in Tecomet's possession at the time of the accident, specifically stated that no work should ever be done inside the machine without first locking it down and turning off the power.  *[See SF, No. 36]* (Also, several years before the accident, Tecomet had been informed by Banner Safety about additional safeguards which would have prevented this accident.) *[See SF, Nos. 30, 34]*  Thus, there were sufficient warnings on the machine and in its accompanying manual to make the danger of reaching into the machine obvious.

In addition to any warnings, Vacirca has admitted that he was aware of the unguarded pedal at the base of the MaxiPres, and that if he stepped on the pedal while his hand was inside the MaxiPres, he would be injured. *[See SF, Nos. 20, 21 and 22]*

 A  claim for breach of a duty to warn under a warranty theory  may be overcome by the "open and obvious danger" defense.  In Carey v. Lynn Ladder & Scaffolding Co., 691 N.E.2d 223, 224 (1998), the court held that the, "duty to warn . . . does not attach where the danger presented is obvious."  See also Carrel v. Nat'l Cord & Braid Corp., 447 Mass. 431, 441 (Mass. 2006); (referring to the "open and obvious" doctrine,  as "a doctrine that has been long recognized in the

Commonwealth as a defense in products liability cases grounded on a claim of failure to warn.").

In Colter v. Barber Greene Co., et al, 403 Mass. 50 (1988), which arose out of an accident

involving an industrial machine, the Court held:

> Where the danger presented by a given product is obvious, no duty to warn may be required because a warning will not reduce the likelihood of injury. . . . Colter admitted he knew it was dangerous to grease the gears while operating the machine. In these circumstances, a warning would not reduce the likelihood of injury.

Likewise, in Bavuso v. Caterpilar Industrial , Inc., 408 Mass. 694 (1990), the Court held

that, as a matter of law,  there could be no liability for breach of warranty because the danger was

open and obvious.  Bavuso involved a plaintiff who was injured when a load fell on him while he

was operating a forklift.  The forklift was equipped with an overhead guard, but the guard had been

removed by plaintiff's employer.  There were signs on the machine warning users that it was

dangerous to operate the forklift without the overhead guard.  The plaintiff had argued that the

warnings were inadequate.  But the court held that since plaintiff was an experienced forklift

operator,  who had operated other forklifts that were equipped with an overhead guard, "a warning

beyond the warnings given could not have made the danger any more obvious, and, therefore,

could not have reduced the likelihood of injury to an experienced operator voluntarily exposing

himself to a visible hazard."  Id. at 702.

Wasylow v. Glock, Inc., 975 F. Supp. 370 (D. Mass. 1996),  involved a suit brought by a

plaintiff who shot himself in the stomach with a pistol manufactured by the defendant.  Quoting

Laaperi v. Sears Roebuck & Co., 787 F.2d 726, 730 32 (1st Cir. 1986), the Wasylow Court

explained that some dangers are too obvious to require a warning from a product manufacturer:

For example, a manufacturer is not required to warn that "placing one's hand into the blades of a

potato chopper will cause injury" or that "firing a BB gun at another at close range can injure or kill."

Wasylow, 975 F. Supp. at 378.  The Wasylow Court allowed the defendant's Motion for Summary

Judgment, explaining:

> Thus, although I recognize that  the adequacy of warnings is "almost always an issue to be

> resolved by a jury," I find that given the facts before me, especially Wasylow's admissions, no reasonable juror could find a failure to warn. Moreover, Wasylow's deliberate indifference to the warnings constituted the cause in fact as well as the proximate cause of his injuries. For the same reasons, I find no implied breach of warranty for failure to warn.

Id. (Internal citation omitted). See also Polak v. Whitney, 21 Mass. App. Ct. 349 (1985) (danger so open and obvious that the law cannot impose upon the defendant a duty to warn).

The Vacirca case is clearly a case in which the danger (injury due to reaching into the MaxiPres) was so open and obvious, especially in light of the graphic warnings that were attached to the machine, that "no reasonable juror could find a failure to warn." Wasylow, at 378. Vacirca plainly showed indifference to the posted warnings and to common sense when he failed to take the simple precaution of braking the machine or turning it off before reaching into it. He knew both of these precautions were available to him and he had used them in the past when reaching inside the MaxiPres. *[See SF, Nos. 23 and 24]* As such, he voluntarily exposed himself to an obvious hazard. Tecomet was also well aware of the dangers associated with reaching into the machine, and, "a warning beyond the warnings given could not have made the danger any more obvious." Basuvo, supra, at 702. Accordingly, as a matter of law, NMC cannot be held liable for breach of warranty due to any failure to warn in this case.

**b.    Vacirca's Warranty Claims Are Barred By the Sophisticated User Defense**

In Carrel v. National Cord & Braid Corp., 447 Mass. 431, 440 441 (2006), the Supreme Judicial Court adopted the "sophisticated user doctrine." This doctrine:

> Relieves a manufacturer of liability for failing to warn of a product's latent characteristics or dangers when the end user knows or reasonably should know of a product's dangers. . . . The sophisticated user defense is an application of the established principle that a manufacturer may avoid liability ""for failing to warn someone of a risk or hazard which he appreciated to the same extent as a warning would have provided ... It applies when a warning will have little deterrent effect and it allows the fact finder to determine that no such duty [to warn] was owed."

In Carrel, the plaintiff's eye was severely injured at a Boy Scout Camp when he was struck by a loose zip line after a knot in a bungee cord came loose. An expert testified that this type of

cord had intrinsic properties which caused certain types of knots to loosen over time.  The Boy
Scout leader knew this, but the manufacturer did not.  The Court held that the jury could find that
the Boy Scouts were "sophisticated users," since they knew about the bungee cord 's properties.
The Court stated: "It is not necessary that the user know the exact characteristics of the product
that make it dangerous.  It is enough that the user knew or reasonably should have known of the
particular danger to be guarded against, in which case an additional warning would have been
superfluous." Id. at 445.  See also American Mut. Liability Ins. Co. v. Firestone Tire and Rubber
Co., 799 F.2d 993 (5th Cir. 1986) (In a case where the plaintiff was injured when he overinflated
a tire and it exploded, the court found that as a matter of law, the plaintiff, who had been a tire
serviceman for two years and had mounted hundreds of tires, was a sophisticated user and the
defendant had no duty to warn.)

In Chamian v. Sharplan Lasers, Inc., 2004 Mass. Super. LEXIS 357 ,*19- *22 (2004), the
court granted summary judgment based on the sophisticated user defense in a case in which the
plaintiff alleged breach of warranty and negligence against the manufacturer of a medical device,
for failing to warn the physicians that operated the device of potential harm to patients.  The
physician/operators admitted that they had read the Users Manual provided by the manufacturer,
that warned that the device could injure the patient in certain circumstances.  The court held that
the physicians were sophisticated users who knew of the machine's hazards and that there was
therefore no evidence that any additional warnings by the manufacturer would have been heeded.
As a result, the plaintiff's failure to warn claim failed as a matter of law.

Vacirca had  worked with presses, including the Maxipress, 40 to 60 hours per week, for
over 8 years.  It is indisputable that he was intimately familiar with the dangers of the MaxiPres of
which he is complaining.  Vacirca has admitted that he was aware that reaching into the machine
without shutting it off was dangerous.  Moreover, Tecomet's personnel knew about the safety
hazards and the machine's safety features (and they were also aware of the recommendations that

- 12 -

had been made to improve the safety of the machine), even if Vacirca was not aware of all of the machine's safety features. Therefore, there is no question that both Vacirca and Tecomet were "sophisticated users" with regard to operation of the MaxiPres, and, accordingly, they, "appreciated to the same extent as a warning would have provided," the danger of reaching into the machine. Thus, NMC cannot be held liable for failure to warn.

### c.     Vacirca's Warranty Claims Are Barred By the <u>Correia</u> Defense

In <u>Correia v. Firestone Tire & Rubber Co.</u>, 388 Mass. 342 (1983) the Supreme Judicial Court held that a plaintiff will be barred from recovery if he failed to "act reasonably with respect to a product he knows to be defective and dangerous." <u>Id</u>. at 355. The Court added that a user who

> unreasonably proceeds to use a product which he knows to be defective and dangerous' violates his 'only duty' under our warranty law and thereby forfeits the law's protection. When the consumer's knowing use of a product in a dangerous and defective condition is unreasonable, the consumer's own conduct has become the proximate cause of his injuries, and he can recover nothing form the seller.

<u>Id</u>. at 356. Following the <u>Correia</u> decision, courts began referring to the "<u>Correia</u> defense," which forfeits the law's warranty protections if the plaintiff breached his duty to "act reasonably with respect to a product" he knew to be "defective and dangerous." <u>See, e.g.</u>, <u>Haglund v. Phillip Morris, Inc</u>., 446 Mass. 741, 748-749 (2006)

Vacirca's testimony clearly and unequivocally establishes that he knew that the MaxiPress was dangerous. *[See SF, Nos. 20-22]* He knew that the pedal was unlocked and he knew that if he accidentally stepped on it, the machine would cycle. *[See SF. No. 22]* He also was aware that if he reached into the machine without shutting it off, his hand could be seriously injured. *[See SF, No. 20]* And yet, despite this knowledge, Mr. Vacira inexplicably and unreasonably reached into the MaxiPres without either activating the brake or turning off the power, both of which would have completely removed the danger of injury to his hand. In these circumstances, where there is no material issue of fact as to Vacirca's knowing and unreasonable use of the machine, NMC is

entitled to a judgment barring Vacirca's warranty claim pursuant to the <u>Correia</u> defense.

### 3.    NMC's 1999 Inspection of the MaxiPres Did Not Create a Duty to Warn

Vacirca is apparently alleging that even if NMC does not have any duty to warn based on a defective design claim, NMC nevertheless had a duty, pursuant to the implied warranty of merchantability and fitness, to warn Tecomet about the redesigned pedal as a result of NMC's 1999 inspection of the machine. That argument, however, is contrary to Massachusetts law. Tecomet engaged NMC to inspect the machine only for mechanical, not safety, problems. Under such circumstances, there can be no basis for warranty liability for any of the services proposed by NMC.

In <u>Currie v. Lee Equipment Corp.</u>, 362 Mass. 765 (1973), the plaintiff's husband was killed when monorail hoist on which he was working failed. The plaintiff alleged that the defendant manufacturer's mechanic, who had performed repair work on the hoist previous to the accident, negligently failed to warn her husband's employer that the hoist was missing a wire which would have made it safer. The court held, however, that the defendant 's mechanic only had a duty to use ordinary care when performing the repair work. "[T]he defendant was under no obligation to instruct [the decedent's employer], a company experienced in the operation of the hoist, in the use of safety precautions against hazards unrelated to the defect which he was called upon to repair." <u>Id</u>. at 769.

In <u>Mathers v. Midland Ross Corp.</u>, 403 Mass. 688, 691 (Mass. 1989), plaintiff's arm was crushed in a "slitter rewinder" machine when he was performing maintenance and his supervisor inadvertently turned on the machine. There was no proof that the defendant manufactured the machine, but plaintiff sought to impose liability for defendant's failure to warn, based on an inspection it had performed several years earlier. In denying liability based on breach of warranty, the court explained:

> The plaintiffs argue that, even if Midland had not manufactured the machine, it should be held liable because it had inspected the machine several years earlier in connection with another lawsuit, and because it issues instructions concerning the use of this kind of machine. There is no merit to this argument. An inspection in the course of the defense of a lawsuit did not

> impose any duty on Midland or prove that Midland, because it inspected the machine, voluntarily assumed the duty of providing inspectional services for the machine.

Id. at 691.

In Williams v. Monarch Machine Tool Co., Inc., 26 F.3d 228, 232 (1st Cir.1994), the plaintiff was injured on an industrial machine. The plaintiff argued that defendant was aware that plaintiff's employer's machine was dangerous and unguarded because defendant had serviced the machine from time to time. The court held that Massachusetts law does not impose such a post-sale duty to warn simply because the manufacturer serviced the machine.

In Baker v. Poolservice Co., 272 Va. 677 (2006), a Virginia case that is conceptually indistinguishable from the Vacirca case, a pool contractor, Poolservice, was engaged to inspect a spa and perform routine maintenance. The contractor, restored the machine to its original operating condition. A young girl was subsequently killed when she was dragged underwater by the spa's suction. In explaining why the contractor was not liable for a breach of a duty to warn, the court explained:

> The spa owner requested Poolservice only to perform seasonal maintenance and did not hire Poolservice to perform a general safety check of the spa, or to perform any work on the drain cover. Poolservice competently performed the requested repair work and returned the spa to its normal functioning capacity and was under no duty to warn of any potential dangers unrelated to its specific undertaking. Poolservice assumed no duties outside the parameters of those for which it had been contracted.

Id. at 685.

NMC was not asked to perform a safety inspection on the MaxiPres in 1999 and, although it made a proposal to fix certain mechanical problems identified in the inspection and to service the machine, NMC was never actually engaged to perform any repair or maintenance services at all for Tecomet. *[See SF, No. 45]* In addition, the pedal was completely unrelated to the mechanical problems NMC was asked to examine. Accordingly, NMC never assumed any duty to warn Tecomet about safety upgrades as a result of the 1999 service call, and NMC cannot be held liable for failure to warn Tecomet.

- 15 -

**D.    NMC Is Entitled to Summary Judgment on Vacirca's Negligence Claim**

In Count II of the Amended Complaint, Vacirca has asserted that NMC negligently failed to warn Tecomet that a redesigned pedal or two-hand control could have been installed on the MaxiPres, which allegedly would have prevented Vacirca's injury.  Although a defendant's negligence is usually a question of fact,  the facts of this case are so clear and undisputed with regard to NMC's defenses that this is a case in which summary judgment as a matter of law is appropriate.  See, e.g., Roderick v. Brandy Hill Co., 36 Mass. App. Ct. 948, 949 (Mass. App. Ct. 1994) ("Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact. . . . However, a judge may decide the issue as matter of law when no rational view of the evidence permits a finding of negligence."); See also Jones v. Walter Kidde Portable Equipment, Inc., 16 F. Supp. 2d 123 (D. Mass. 1998) (Judgment Notwithstanding the Verdict was granted to defendant manufacturer of medical device in negligent failure to warn case, where court held, as a matter of law,  warnings beyond the ones given by the defendant would not have protected the plaintiff from injury.).

**1.    The "Open and Obvious Danger" Defense Defeats Vacirca's Negligence Claim as a Matter of Law**

At the outset, it should be noted that there is little or no difference in the "open and obvious" defense to a negligence claim or to a warranty claim.  "[W]e implicitly recognized that negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard: the reasonableness of the defendant's actions in the circumstances. We have since expressly recognized that convergence."  Hoffman v. Houghton Chemical Corp., 434 Mass. 624, 751 N.E. 2d 848 (2001). Furthermore, "[a] defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true." Id., quoting Colter, 403 Mass. at 61. Thus, "[a] defendant cannot be found to have been negligent without having breached the warranty of merchantability." Id., quoting Colter,

403 Mass. at 61.

As in a warranty claim, in a negligent failure to warn case, the defendant is entitled to summary judgment where the hazard that caused the injury is so open and obvious that, "the law cannot impose upon the defendant a duty to warn." Bontos v. Chrysler Corp., 1995 Mass. Super. LEXIS 438; Polak v. Whitney, 21 Mass. App. Ct. 349, (1985). Since the standard for both warranty and negligence are the same, all of the warranty cases, cited above, relating to the open and obvious defense, apply to Vacirca's negligence claim as well. As such, Vacirca's negligent failure to warn claim fails for the reasons set forth above in the warranty section.

**2.     The Sophisticated User Defense Bars Vacirca's Negligence Claim**

As in breach of warranty claims, the sophisticated user defense bars negligence liability for, "failing to warn someone of a risk or hazard which he appreciated to the same extent as a warning would have provided." Carrel, 447 Mass at 440 41; Marques v. Bellofram Corp., 28 Mass. App. Ct. 277, 280 (1990). Here, as explained above, there is no question that Tecomet, having employed the MaxiPres in its manufacturing process for at least 20 years at the time of the accident, and having solicited at least one proposal for safety upgrades to the MaxiPres prior to the accident, was a "sophisticated user." Vacirca, as an experienced operator of the MaxiPres, admittedly aware of its dangers, also falls within the definition of a "sophisticated user." As such, NMC cannot be found to have negligently failed to warn Tecomet or Vacirca of the dangers about which they already knew.

Moreover, in a situation such as Vacirca's, in which an employee is injured by a product that is supplied to his employer by the defendant manufacturer, and the employer is familiar with the dangers associated with the product, it has been held that the "sophisticated user" doctrine transfers the duty to warn from the manufacturer to the employer. Singleton v. Manitowac Co.,Inc., 727 F. Supp. 217, 225 (D. Md. 1989); Goodbar v. Whitehead Bros., 591 F. Supp. 552 (W.D.Va. 1984). As the court in Goodbar stated:

- 17 -

> In alleged negligent failure to warn situations such as this litigation, if the danger related to the particular product is clearly known to the purchaser/employer, then there will be no obligation to warn placed upon the supplier.  Instead, it becomes the employer's responsibility to guard against the known danger by either warning its employee or otherwise providing the necessary protection. Stated another way, when the supplier has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated.

Id. at 560-61.  Similarly, in a case in which an employee of Anheuser Busch was injured by a brewing machine, the Fourth Circuit held that the manufacturer of the machine was not, as a matter of law, liable to the employee for negligently failing to warn of  dangers associated with the machine.  Marshall v. H. K. Ferguson Co., 623 F.2d 882 (4th Cir. 1980).  Rather, the Marshall court held that, "[u]nquestionably the employees of Anheuser Busch were as well informed [as the manufacturer] in regard to the operation of the [brewing machine] and the hazards incident thereto. Under these circumstances, we agree with the district court that [the manufacturer] had the right to rely upon the expertise of the brewery personnel and had no obligation to warn." Id. at 887.

The Supreme Judicial Court expressed a similar view in Hoffman v. Houghton Chemical Corp., 434 Mass. 624 (2001), when it adopted the "bulk supplier doctrine:" "[A] supplier of a potentially dangerous product has a duty to warn all foreseeable users of known or reasonably foreseeable hazards of the product's use, but . . . , in certain limited circumstances 'a manufacturer may be absolved from blame [for failure to warn] because of a justified reliance upon... a middleman,' so long as such reliance is reasonable.." Id. at 632, quoting MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131 (1985). The bulk supplier doctrine applies only when a product is delivered in bulk to an intermediary vendee, which is obviously not the case here. However, the MacDonald case, citing Restatement of Torts 2d §388[1], did not involve a bulk

---

[1]     Restatement 2d of Torts §§388 (1965) provides: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by  a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

supplier, and the Restatement does not require that a bulk supplier be involved in for a manufacturer to justifiably rely on the sophisticated middleman (here Tecomet) to adequately warn the ultimate user of any dangers.  In addition, the U.S. District Court in Maryland has noted that "the principle of relieving the manufacturer from liability where the purchaser is a knowledgeable industrial user extends beyond suppliers of raw materials to suppliers of finished products." Singleton v. Manitowoc Co., Inc., 727 F. Supp. 217 (D. Md. 1989) (citing Spangler v. Kranco, Inc, 481 F.2d 373 (4th Cir. 1973), where, in a case involving an injury to a construction worker,  the court held that the supplier of a crane to the construction company had no duty to warn the company of hazards involving the crane because the company was a sophisticated user.)

Here, Tecomet was in a much better position than NMC  to warn its employees about the hazards related to reaching into the MaxiPres.  In addition, Tecomet was as aware of those hazards, if not more so, than NMC.  As such, Tecomet was a "sophisticated user" with regard to the MaxiPres, and the duty to warn Vacirca about the hazards related to the machine was soley Tecomet's.  Consequently, NMC cannot be held liable for failure to warn.

### 3.    Even if NMC Owed a Duty to Warn, There is no Presumption that Tecomet or Vacirca Would Have Followed Any Such Warning

Ordinarily in Massachusetts, a plaintiff is entitled to a presumptive, "inference that a warning, once given, would have been followed."  Harlow v. Chin, 405 Mass. 697 (1989).  This presumption, however, is rebuttable.  Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 123 (1st Cir. 1991) (Massachusetts law).  The fact that Tecomet rejected a recommendation for a safety upgrade years before the accident, that would have prevented an operator from putting his hand in the machine while it was operating, however, clearly rebuts the presumption that Tecomet would have acted upon any similar recommendation made by NMC if one had been made earlier.  See, e.g., Kenney ex rel. Keyes v. Deere & Co., 2000 U.S. Dist. LEXIS 2530 *20 (E.D. Pa. 2000) (habitual failure to follow lawnmower instructions rebuts inference that warnings regarding children

would be followed).  Accordingly, even if NMC's 1999 inspection of the MaxiPres somehow created a duty on the part of NMC to warn Tecomet about possible safety upgrades to the machine, there is no evidence that Tecomet would have installed any of those upgrades. Therefore, as a matter of law, Tecomet is not entitled to a presumption that it would have installed safety upgrades even if NMC had informed Tecomet about them.

## IV.    CONCLUSION

For the reasons set forth above, Vacirca's warranty and negligence claims are barred as a matter of law, and NMC is entitled to summary judgment.

Dated: May 4, 2007

Respectfully submitted,
Defendant National Machinery Company
By its Attorneys,

/s/ Gerald S. Frim
Mark E. Cohen        [BBO #089800]
Robert J. Maselek      [BBO #564690]
Gerald S. Frim BBO     [BBO # 656204]
The McCormack Firm, LLC
One International Place
Boston, MA   02110
Ph: 617 951 2929

### Certificate of Service

I, Gerald S. Frim, hereby certify that the foregoing document and all exhibits thereto, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 4, 2007.

**Dated:** May 4, 2007                                    */s/ Gerald S. Frim*

97481.1

- 20 -